## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

BARRY G. AARON                                          PLAINTIFF
ADC #097176

V.                          No. 5:19CV00089-BRW-JTR

WENDY KELLY, Director, Arkansas
Department of Correction, *et al.*                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent
to United States District Judge Billy Roy Wilson. You may file written objections to
all or part of this Recommendation. If you do so, those objections must: (1)
specifically explain the factual and/or legal basis for your objection; and (2) be
received by the Clerk of this Court within fourteen (14) days of the date of this
Recommendation. If you do not file objections, Judge Wilson can adopt this
Recommendation without independently reviewing all of the evidence in the record.
By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

On March 12, 2019, Barry G. Aaron, a prisoner in the Varner Unit of the
Arkansas Department of Correction ("ADC"), filed this *pro se* action alleging that,
between 1991 and 2018, twenty-three Defendants, at seven different ADC units,
violated his constitutional rights in numerous ways. *Doc. 2.*

On March 26, 2019, the Court struck Aaron's 127-page Complaint because: (1) many of his claims against certain Defendants arose more than three years before he filed this case, which meant those claims were barred by the applicable three-year statute of limitations; and (2) most of his other claims were factually and legally unrelated. *Doc. 5.* The Court allowed Aaron thirty days to file a Substituted Complaint.

On April 10, 2019, Aaron filed his Substituted Complaint, which names seventeen Defendants, and is limited to conduct occurring at the Ouachita River Unit ("ORU") and the Varner Unit.[1] *Doc. 6.* He has also filed a Motion for Temporary Restraining Order. *Doc. 8.*

## II. Screening

Before Aaron may proceed with this case, the Court must screen his allegations.[2]

---

[1] The ORU Defendants reside in, and the claims giving rise to Aaron's claims against them occurred in, the Western District of Arkansas. While those claims could be severed and transferred to the Western District, they are identical or related to Aaron's other claims that arose in this District and, as explained, are clearly without merit. Accordingly, the Court has considered the ORU claims in the interest of judicial efficiency. *See* 28 U.S.C. § 1391(b) (in a non-diversity case, venue is proper in the judicial district "where any defendant resides" or where "a substantial part of the events or omissions giving rise to the claim occurred"), § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"), & § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

[2] The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The

### A.    Claims Barred by Statute of Limitations

The Court can properly dismiss claims as frivolous when it is apparent, from the face of the complaint, that the statute of limitations has run. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992); *see Spradling v. Hastings,* 912 F.3d 1114, 1119 (8th Cir. 2019) (Arkansas's three-year statute of limitations for personal injuries applies to § 1983 actions filed in Arkansas); *Winston v. Burl,* 596 Fed. Appx. 525, 525 (8th Cir. 2015) (affirming § 1915A preservice dismissal of claims that were barred by statute of limitations); *Hall v. Elrod,* 399 Fed. Appx. 136, 137 (8th Cir. 2010) (same). *Housley v. Erwin,* 325 Fed. Appx. 474, 475-76 (8th Cir. 2009) (same).

In its Order striking Aaron's original Complaint, the Court instructed Aaron that his Substituted Complaint should be limited to claims arising *after* March 12, 2016, *i.e.,* three years before he initiated this action. The Court also instructed Aaron to "clearly state[] when and where" the claims arose and to "name[] *only* the Defendants involved in the factually and legally related claims arising after March 12, 2016." *Doc. 5 at 1-2 & 4.* Despite those specific instructions, the *only date* Aaron mentions in his Substituted Complaint is October 17, 2017, when he was transferred

---

Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that:  (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.  *Id.* § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider the documents attached to the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011); *see also Cooper v. Schriro,* 189 F.3d 781, 783 (8th Cir. 1999) (*pro se* pleadings must be liberally construed).

from the ORU to the Varner Unit. *Doc. 6 at 10.*[3] Thus, to the extent any of the claims in Aaron's Substituted Complaint relate to misconduct by the ORU Defendants that took place *before* March 12, 2016, those claims are barred by the applicable three-year statute of limitations, and should be dismissed as untimely.

### B.    Aaron's Claims that ORU and Varner Unit Female Guards Observed Him Naked

Aaron alleges that his constitutional rights were violated when ORU and Varner Unit female guards watched him shower and take care of bodily functions in the bathroom. According to Aaron, this "illegal" conduct constitutes "systematic sexual misconduct," deliberate indifference to his bodily privacy, infliction of mental cruelty, and neglect to his safety. He also alleges that this conduct constitutes "voyeurism," in violation of state and federal criminal law. *Doc. 6 at 8-23.*

Specifically, Aaron alleges that, while he was housed at the ORU, Defendants Captain Haney ("Haney"), Lieutenant Jennifer Carl ("Carl"), Corporal Valerie White ("White"), Corporal Brenna Elkins ("Elkins"), Corporal Stoutenburg ("Stoutenburg") and Corporal Martina Waldera ("Waldera") viewed him naked on the video monitors while he was showering and using the toilet. He also alleges that White, Elkins, Stoutenburg and Carl often walked to the entrance of the bathroom

---

[3]In his original Complaint, Aaron stated that he was in the ORU from February 20, 2014 through October 17, 2017. *Doc. 2 at 2.* In his Substituted Complaint, he gives *no dates* when the ORU Defendants allegedly engaged in the misconduct described in his Substituted Complaint.

while he was showering and engaged him in conversation so that they could see him naked. *Id. at 9-10 & 16-20.*

He alleges that ORU Warden N. Faust ("Faust"), Deputy Warden A. Jackson ("Jackson") and Deputy Warden Steve Outlaw ("Outlaw") knew cameras were in the bathroom and showers and that video monitors allowed female guards (Haney, Carl, White, Elkins, Stoutenburg and Waldera) to watch him while he was naked, but failed to correct this "illegal" conduct. *Id. at 8-10 & 14-16.*

Similarly, after he was transferred to the Varner Unit on October 17, 2017, Aaron alleges that Defendants Warden James Gibson ("Gibson"), Deputy Warden Jared Byers ("Byers"), Deputy Warden James Shipman ("Shipman"), and Major Randy Straughn ("Straughn") allowed unidentified female guards in the control booth to watch him shower through a large window providing an unrestricted view of the toilets, urinals and showers. According to Aaron, those named Defendants failed to correct these "illegal actions" by the unidentified female guards. *Id. at 10-12 & 21-22.*

Finally, Aaron alleges that ADC Director Wendy Kelley ("Kelley"), ADC Deputy Director Dexter Payne ("Payne") and ADC Deputy Director Marshall Dale Reed ("Reed") know that cameras are used in the bathrooms and showers at ORU and the Varner Unit, and allow guards to watch naked prisoners. *Id. at 8-9 & 12-14.*

Many decades ago, the United States Supreme Court recognized that a "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer,* 468 U.S. 517, 527-28 (1984); *see Bell v. Wolfish,* 441 U.S. 520, 537 (1979) ("Loss of freedom of choice and privacy are inherent incidents of confinement.").

The Eighth Circuit also has repeatedly held that prisoners do not have a constitutionally protected privacy right preventing them from being observed by guards of the opposite sex. *Bell v. Conrad,* 749 Fed. Appx. 490, 491 (8th Cir. 2019) (affirming preservice dismissal and holding that "prison officials did not violate a clearly established constitutional right by allowing female guards to monitor Bell through surveillance cameras"); *Hill v. McKinley*, 311 F.3d 899, 903 (8th Cir. 2002) (holding that a female detainee's constitutional rights were not violated when she was required to undress in front of a male guard); *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990) ("Whatever minimal intrusions on an inmate's privacy may result from [opposite-sex] surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities."); *see also Robinson v. Boulier,* 121 F.3d 713, at *1-2 (8th Cir. 1997) (holding that no constitutional violation arose from female officers' "panoramic view" of male inmates' shower and toilet areas).

6

In light of this black letter law, Aaron has failed to state a claim against ORU Defendants Haney, Carl, White, Elkins, Stoutenburg and Waldera, based on their surveillance of him while he was in the shower or bathroom.

Furthermore, because Aaron has failed to demonstrate an underlying constitutional violation based on female guards' surveillance of him, his corrective inaction claims in this regard, against Defendants Faust, Jackson, Outlaw, Gibson, Byers, Shipman, Straughn, Kelley, Payne and Reed, also fail as a matter of law. *See Mendoza v. United States Immigration & Customs Enforcement*, 849 F.3d 408, 420 (8th Cir. 2017) (supervisory liability claims "automatically fail for lack of an underlying constitutional violation"); *Williams v. Davis*, 200 F.3d 538, 539 (8th Cir. 2000) ("Absent a constitutional violation, there [is] no basis for section 1983 liability on the part of [supervisors].").

Finally, Aaron has no standing to bring criminal charges, under state or federal law, against the Defendants.[4] *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) (private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another); *Anguiano v. Dallas County Jail Under Sheriff,* 590 Fed. Appx. 652, 652 (8th Cir. 2015) (plaintiff lacked standing to seek criminal charges against jail guards).

---

[4]It bears noting that the state and federal statutes criminalizing "video voyeurism" do *not* apply to correctional facilities. *See* 18 U.S.C.A. § 1801(c); Ark Code Ann. § 5-16-101(d)(5) (2019).

7

Accordingly, all of Aaron's foregoing claims against ORU or Varner Unit Defendants, based on female guards watching him while he was naked, should be dismissed, without prejudice, for failing to state a claim upon which relief may be granted.

### C.    Aaron's Claim That Defendant Carl "Strip Searched" Him

In its Order directing Aaron to file a Substituted Complaint, the Court instructed him to "include *only* claims about events that took place *after* March 12, 2016" and "clearly state[] when and where the allegedly unlawful conduct occurred." *Doc. 5 at 4.* Aaron's Substituted Complaint contains this allegation: "Defendant Carl, a Lt. at ORCU, Special Need Unit, used a male and female cadet, strip searched Plaintiff, humiliating him." *Doc. 6 at 16.* Aaron does *not* state: (1) when this "strip search" occurred; (2) whether Carl or the male cadet actually performed the search; or (3) any facts about the manner or purpose of the search, or how it violated his constitutional rights.

In *Iqbal,* the Court clarified that "labels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a viable claim for relief. *Iqbal*, 556 U.S. at 678; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 676.  In this respect,

8

a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although he has been given the opportunity to do so, Aaron has not provided *any factual details* to support his claim that this alleged "strip search" on one occasion, on some unspecified date, somehow violated his constitutional rights. Under *Iqbal*, Aaron's conclusory one-sentence allegation, which is vague and without any "factual content," is insufficient to plead a viable claim that Carl violated his constitutional rights. *See Story v. Foote*, 782 F.3d 968, 970-73 (8th Cir. 2015) (while "prison inmates are entitled to Fourth Amendment protection against unreasonable searches of their bodies," this fact-intensive analysis "requires a balancing of the need for a particular search against the invasion of personal rights involved").

Accordingly, Aaron's claim that Defendant Carl "strip-searched" him should be dismissed, without prejudice, for failing to state a claim upon which relief may be granted.

### D.    Aaron's PREA Claims

Aaron alleges that Defendant Kelley "persuaded" Defendant Governor Asa Hutchinson not to register the ADC under the Prison Rape Elimination Act ("PREA") because it would "hamper staff advancement." According to Aaron,

Kelley knew the ADC could not comply with unspecified PREA requirements because most of the ADC employees are female. *Doc. 6 at 7-8 & 12-13*. He seeks an injunction "ordering [Kelley and Hutchinson] to register the Arkansas prison system with the federal PREA." *Id. at 24*. He also alleges that various other Defendants knew that PREA signs were posted at the ORU and Varner Unit, yet failed to correct "illegal sexual misconduct" that was occurring in violation of the PREA, *i.e.*, surveillance of him by female guards. *Id. at 11, 15-16*.

The PREA authorizes the federal government to give grants to prisons and detention facilities that implement procedures designed to reduce the number of prison rapes. *See* 34 U.S.C. §§ 30301-30309. It does *not* authorize or create a private right of action. *See Bowens v. Wetzel*, 674 Fed Appx. 133, 137 (3rd Cir. 2017) ("Bowens may not attempt to enforce statutes or policies that do not themselves create a private right of action by bootstrapping such standards into a constitutional deliberate indifference claim."); *Krieg v. Steele*, 599 Fed. Appx. 231, 232-33 (5th Cir. 2015) (finding that PREA does not afford a private right of action); *Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016).

Thus, all of Aaron's claims, based on the PREA, should be dismissed.

### III. Motion for Temporary Restraining Order

In his Motion for Temporary Restraining Order, Aaron alleges that he has a "bad heart," and is due for a check-up for his pacemaker.[5] *Doc. 8.* According to Aaron: (1) he is currently incarcerated at the Varner Unit; (2) a cardiologist at the ORU "Special Needs Hospital" provides medical care for inmates with heart conditions; (3) he had an appointment scheduled with that cardiologist; (4) he "had to cancel" that appointment  because of "fear of retaliation" from Defendants Haney and Carl, who work at the ORU; and (5) he "has tried to have his pacemaker checked in other ways, to no avail." *Id.* Although unclear, it appears that Aaron is asking the Court to transfer him to the ORU for this pacemaker check-up and to "restrain" Haney and Carl from "retaliating" against him while he is at the ORU.

An *ex parte* temporary restraining order is an extraordinary remedy that can be granted only if the moving party has established that he will suffer irreparable harm if relief is not immediately granted. *See* Fed. R. Civ. P. 65(b); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974). The Eighth Circuit has emphasized that "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of

---

[5]Aaron states that his last pacemaker check-up was in the "winter of 2018," with another check-up due three months later.

prison administration." *Goff v. Harper,* 60 F.3d 518, 520 (8th Cir. 1995) (internal citation omitted).

The Court cannot order the ADC to transfer Aaron to the ORU. It is well settled that a prisoner does not have a constitutional right to be held in the prison of his choosing. *Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999).

His entirely conclusory allegations that he needs a pacemaker checkup, which must be performed at the ORU (where he seeks transfer), and that he "fears retaliation" from Defendants Haney and Carl (if he is transferred to the ORU), constitute nothing more than "naked assertions devoid of further factual enhancement." As such, they fail to plead a viable claim for relief under *Iqbal*. Likewise, those allegations fall woefully short of establishing the facts necessary to establish "irreparable harm," as required to support a temporary restraining order.

Accordingly, Aaron's Motion for Temporary Restraining Order should be denied.

## IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Aaron's Complaint and Substituted Complaint (*Docs. 2 & 6*) be DISMISSED, WITHOUT PREJUDICE.

2.      The dismissal of this case be counted as a "STRIKE," pursuant to 28 U.S.C. § 1915(g).

3.      Aaron's Motion for Temporary Restraining Order (*Doc. 8)* be DENIED.

DATED this 21st day of August, 2019.

_____
UNITED STATES MAGISTRATE JUDGE